## MICHIGAN GARAGE & ACCESSORY CO. v. DRURY.

Circuit Court of Appeals, Sixth Circuit. March 15, 1929.

No. 5221.

Wm. S. McDowell, of Detroit, Mich. (H. V. Barbour, of Detroit, Mich., on the brief), for appellant.

Harold Goodman, of Detroit, Mich. (Nicholas J. Rothe, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, MACK, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge. There are two questions presented on this appeal. The first is whether an appeal lies from an order setting aside an adjudication in bankruptcy and dismissing the voluntary petition upon which the adjudication was had. We have been cited to no case in which this question has heretofore been raised or passed upon, but we do not hesitate to give section 25a of the Bankruptcy Act (title 11, § 48 U. S. C. [11 USCA § 48 [a]) a broad enough construction to include such an appeal.

The other question requires a consideration of the evidence. The appellant company was organized by Colin Campbell in the early part of 1923 and at once entered into the garage business. At that time Campbell had the property at 467 Selden avenue, Detroit, under lease at a monthly rental of $400. As security for this rental he had made a deposit with the lessor of $1,000. He permitted appellant to occupy the property at the same rate of rent for which he was bound to the owner. Appellee, who had been Campbell's chauffeur, was put in charge of the business. He was given 5 shares of the company's capital stock. Later he agreed to purchase the rest of the stock from Campbell, 495 shares, for $8,000. He paid part of this price in cash, and agreed to pay the balance at the rate of $200 a month. For some reason—quite likely lack of funds—he discontinued making payments on the stock after May of 1925. He claims that it was because negotiations to sell the business were pending. It is certain that both he and Campbell were trying to sell it for several months, and neither was able to do so.

By January 1, 1926, the company's business had run down. There were no funds to pay operating expenses, and there were unpaid bills and an unsatisfied judgment against the company. On January 10th Campbell took possession of the business. To this Drury seemed to assent. At that time the $1,000 that Campbell had put up as security for rents had been consumed, or would be consumed at the end of that month, and appellee was then in arrears with Campbell to the amount of $1,200. A meeting of the stockholders of the company was held, and a resolution was adopted—at Campbell's direction, no doubt—directing the officers of the company to file a voluntary petition in

bankruptcy. This was done and an adjudication had, after which appellee intervened, and at his instance the adjudication was set aside and the petition dismissed, the court holding that Campbell, through the petitioner, had used the processes of the court to perpetrate a fraud upon the appellee.

In his contract with appellee, Campbell had agreed not to pledge or incumber the capital stock of the company, and to transfer it to appellee upon payment of the complete purchase price. There was no surrender by Campbell of any other rights incident to the ownership of the stock. We have no doubt of his right to use the stock to elect a board of directors which would put the company into bankruptcy if its affairs legally justified that action. This, of course, he could not do if he practiced any fraud upon the appellee in making the contract; but we find no evidence of any such fraud. Neither do we find evidence of fraud in the action of the directors in instituting the bankruptcy proceeding. The company was without credit and could not pay its debts. It had reached the point—brought there under appellee's management—when bankruptcy proceedings were justified. In re Pyatt (D. C.) 257 F. 362; In re Montevallo Mining Co. (C. C. A. 5) 294 F. 171. In the preceding year it had lost several thousands of dollars. Campbell had lost practically everything he had turned over to the appellee, at least $5,000. While appellee had paid Campbell about $3,000, he had dissipated a greater amount than that in assets of the company. He had no funds and could not continue to operate the business. Campbell had a lease on the property, and was obligated for rents thereunder at the rate, beginning January 1st, of $600 a month. What he sought to do was to wind up the affairs of the company in a legal way. We do not see how the doing of it could have hurt appellee, or resulted in an abuse of the processes of the court.

The judgment is reversed.