## GALBRAITH et al. v. BAY TRUST CO.
### Nos. 6298, 6299.

Circuit Court of Appeals, Sixth Circuit.
April 11, 1933.

J. E. Kinnane, of Bay City, Mich. (Stevenson, Butzel, Eaman & Long, of Detroit, Mich., on the brief), for appellants.

W. B. Henry, of Bay City, Mich. (Clark & Henry, of Bay City, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The American Textiles, Inc., a Delaware corporation, owns all the capital stock of the Bay City Hosiery & Underwear Company, a Maine corporation, and the Illinois Knitting Company, an Illinois corporation. The capital stock of American Textiles is divided into four classes: First preferred, second preferred, A-common, and B-common. The B-common is the voting stock. This stock is held in almost equal parts by two groups, one of which, including the Smiths, holds a large majority of the first preferred. The members of the other group, the appellants, hold very little of the first preferred but have been employed in the operation of the business for a number of years. The secondary stocks are about equally divided between the two groups. On February 4, 1932, the board of directors by resolution directed the president and secretary to file a petition in bankruptcy for the company. The resolution recited that the company owed debts in the sum of $386,000, part of which was past due, that payment of the due debts had been demanded, and that the company was unable to pay or make arrangement to pay them. Following the adoption of the resolution a voluntary petition in bankruptcy was filed and an adjudication had. Subsequently the appellants, holders of a slight majority of the voting stock, elected other directors, who appeared in court and asked that the order of adjudication be set aside and the petition in bankruptcy dismissed. Upon the hearing of the case the court overruled their motion, and this appeal followed.

The motion to set aside the adjudication was based on the ground that the directors who instructed the president and secretary of the company to file the petition were guilty of a breach of trust and want of good faith towards the holders of the subsidiary stocks. The argument is that the company is solvent, that it could be reorganized and operated successfully, and that the purpose of the directors in putting it in bankruptcy was to get possession of the assets and apply them to the first preferred stock to the prejudice of the holders of other classes of stock. The trial court was of opinion that there was no evidence of fraud on the part of the directors, and that the interests of the stockholders at large could be best served by a liquidation in bankruptcy.

American Textiles, Inc., was organized in 1917, and shortly thereafter it acquired all the capital stock of the two subsidiary companies. The history of the company is not encouraging. Since 1920 liquidation has seemed inevitable. In 1927 the company employed an auditing firm to make a survey of its business. The audit disclosed that for the preceding six years the working capital of the company had been depleted by the pay-

ment of dividends in excess of profits. It was the conclusion of the auditor that the stockholders were confronted with the alternative either of complete liquidation or a continuance of the business under revised policies and management. The following year the company operated at a loss of $33,018.61; in 1929 the operating loss was $2,281.31; in 1930, $368,795.43; and for eleven months in 1931, $102,237.57. From time to time the Smiths had indorsed the notes of the company for large sums of money. In August of 1931 Mrs. Smith took up an indebtedness of the company of approximately $150,000, and in October she paid off an additional indebtedness of $27,300. These notes were due and unpaid at the time the petition in bankruptcy was filed. The company had no money with which to pay them and no means of obtaining it. Its history indicated that any attempt to continue operation would result in further losses and eventually in the wiping out of the little value remaining in the first preferred stock.

■■ The right of the company to liquidate in bankruptcy was fixed by its admission of inability to pay its debts in the resolution of February 4. In re Cohn (C. C. A.) 227 F. 843, 844; In re Dressler Producing Corp. (C. C. A.) 262 F. 257, 259. We can see no injustice to the holders of the secondary stocks in the decision of the directors to take that course. Neither can we perceive any fraud on the part of the Smiths in repudiating the plan of reorganization, known as Plan No. 2. This plan proposed to scale down the capital structure represented by the preferred stocks from $1,615,000 to a capital of $146,475. The reduced capital stock was to be apportioned to the old stock as follows: Three shares of the new preferred stock, of no par value, for one share of the first preferred of the old; one share of the new preferred for one share of the old second preferred; and 1/170 of a share of the new preferred for each share of the old common stock A. The class B-common stock was to be converted into a new class of common stock, share for share, having the voting power for the company. Long before this plan was devised the second preferred and the common stocks of the company had ceased to have any value. The plan proposed giving to these stocks an interest in and control of the reorganized company. This was unfair to the holders of the only stock having any potential value—the first preferred. The public, as well as the Smiths, was interested in that stock. It had been sold to the public as a sound investment. Its value had been

greatly depleted. To continue the business would further deplete it. In order to protect their interests in this stock the Smiths had the right to use their influence with the directors to take the obviously wise course. Michigan Garage & Accessory Co. v. Drury, 31 F.(2d) 434 (6 C. C. A.).

The judgment below is affirmed.